UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELIZABETH J. GLEASON NOELLE,

               Plaintiff,

v.                                                                                             5:15-CV-1301
                                                                                               (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| MEGGESTO, CROSSETT LAW FIRM<br>  Counsel for Plaintiff<br>313 East Willow St., Ste. 201<br>Syracuse, NY 13202 | KIMBERLY SLIMBAUGH, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | DANIEL R. JANES, ESQ.<br>PETER W. JEWETT, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

     This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 15.) This case has proceeded in accordance with General Order 18.

     Currently before the Court, in this Social Security action filed by Elizabeth J. Gleason Noelle ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties'

cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 14.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1960. (T. 90.) She completed two years of college. (T. 317.) Generally, Plaintiff's alleged disability consists of lupus, fibromyalgia, and a punctured ear drum. (T. 316.) Her alleged disability onset date is April 10, 2010. (T. 312.) Her date last insured is December 31, 2015. (T. 90.) She previously worked as a data entry clerk and a sales manager. (T. 317.)

### B. Procedural History

On May 20, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 90.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). The case was originally heard on January 9, 2013 before ALJ Mary Joan McNamara; however ALJ McNamara did not issue a written decision. (T. 32-55.) A second hearing was postponed on May 17, 2013 before ALJ Ramon Suris-Fernandez, because Plaintiff's representation was not present. (T. 56-60.) On February 21, 2014, a supplemental hearing was held before ALJ David S. Pang, because the original hearing transcript was lost. (T. 61-88.) On April 25, 2014, ALJ Pang issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 97-114.) On September 14, 2015, the Appeals Council ("AC") denied Plaintiff's

request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 102-109.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2015 and Plaintiff had not engaged in substantial gainful activity since April 10, 2010. (T. 102.) Second, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, bilateral knee osteoarthritis, cervical degenerative disc disease, status post myocardial infarction, and migraine headaches. (T. 102.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 103.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work[1]; however, Plaintiff could occasionally climb ramps and stairs; could never climb ladders, ropes or scaffolds; and could occasionally stoop, kneel, crouch, and crawl. (T. 103-104.) The ALJ determined that Plaintiff should never work around unprotected heights or vibrations. (T. 104.) Fifth, the ALJ determined that Plaintiff was capable of performing her past relevant work as a data entry clerk and sales manager position. (T. 108.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

Plaintiff makes five separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ erred at step four in concluding that Plaintiff could perform her past relevant work as generally performed because Plaintiff's past relevant work as a sales manager was a composite job.  (Dkt. No. 11 at 9-11 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ erred in concluding at step four that Plaintiff's past relevant work included data entry clerk because Plaintiff did not perform this work at a substantial gainful employment level or for a sufficient length of time.  (*Id.* at 11-12.)  Third, Plaintiff argues the ALJ failed to properly evaluate the opinion of Jody Nichols, NP, pursuant to 20 C.F.R. § 404.1513(d) and SSR 6-03p.  (*Id.* at 12-13.)[2] Fourth, Plaintiff argues the ALJ erred in his evaluation of the medical opinion of Nurse Hipple.  (Id. at 13-15.)  Fifth, and lastly, Plaintiff argues that the ALJ erred as a matter of law in rejecting Plaintiff's credibility.  (*Id.* at 15-17.)

### B. Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues Plaintiff can return to her past relevant work as a sales manager.  (Dkt. No. 14 at 5-7 [Def.'s Mem. of Law].)  Second, and lastly, Defendant argues that substantial evidence supported the ALJ's RFC determination because 1) the ALJ properly assessed Nurse Hipple's opinion and 2) the ALJ properly assessed Plaintiff's credibility.  (*Id.* at 9-13.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.*

---

[2] Plaintiff refers to Jody Nichols, NP; however, Plaintiff was never treated by a Nurse Nichols.  This appears to be a typo, as Plaintiff was treated by Jody Hipple, NP.

4

*Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In

other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

For ease of analysis, Plaintiff's arguments will be addressed out of order and in a consolidated manner.

### A. The ALJ's Evaluation of the Nurse Hipple's Opinion

Although a nurse practitioner may be a treating health care provider, not all treating health care providers are "treating sources" under the applicable Social Security Regulations. A "treating source" is defined as the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [plaintiff], or has

6

provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]." 20 C.F.R. § 404.1502. There are five categories of "acceptable medical sources." *Id.* at § 404.1513(a). Nurse practitioners are not included within those categories. Nurse practitioners are listed among the "other medical sources," whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. 20 C.F.R. § 404.1513(d)(1).

Since May of 2001, Plaintiff received her primary care from Jody Hipple, NP. (T. 536.) Nurse Hipple completed a medical source statement on May 11, 2012. (*Id.*) Therein, Nurse Hipple opined that Plaintiff suffered from fibromyalgia, discoid lupus, Raynauld's disease, and degenerative joint disease ("DJD"). (*Id.*) She listed Plaintiff's symptoms as: pain, joint swelling, insomnia, and headaches. (*Id.*) She wrote that medical findings included restricted movement of spine and joints and pain on palpation of muscles. (*Id.*)

Nurse Hipple provided functional limitations based on Plaintiff's impairments. She indicated that Plaintiff could stand and walk less than two hours in an eight hour workday. (T. 536.) Nurse Hipple indicated that Plaintiff could sit for up to two hours in an eight hour workday. (*Id.*) She opined that Plaintiff could lift and carry ten pounds occasionally and frequently. (*Id.*) In response to the question "[d]oes this patient need the freedom to shift at will between sitting or standing/walking" Nurse Hipple indicated "yes." (*Id.*) In response to the question "[d]oes this patient need to lie down at unpredictable times during an 8-hour workday" Nurse Hipple indicated "yes." (*Id.*) She opined that Plaintiff would be absent from work more than three times a month. (*Id.*)

7

The ALJ afforded Nurse Hipple's 2013 statement "no weight." (T. 107.) The ALJ stated that although Nurse Hipple was not an acceptable medical source, he still considered her opinion. (*Id.*) Despite the ALJ affording Nurse Hipple's opinion no weight, he considered her opinion and in fact adopted the portion regarding the amount of weight Plaintiff could lift and carry. (*Id.*) The ALJ did not adopt the remaining limitations imposed by Nurse Hipple, reasoning that the limitations were based primarily on Plaintiff's subjective reports, there were no significant abnormal physical findings to support the limitations, and the limitations were inconsistent with the consultative examiner's examination and opinion. (*Id.*)

Plaintiff argues that the ALJ erred in affording Nurse Hipple's opinion "no weight" based on her status as a non-acceptable medical source. (Dkt. No. 11 at 13 [Pl.'s Mem. of Law].) Plaintiff's argument is without merit. In his decision the ALJ acknowledged that Nurse Hipple was not an acceptable medical source; however, he stated he still considered her opinion and provided specific reasons for rejecting portions of her opinion. (T. 107.) Therefore, the ALJ did not summarily reject Nurse Hipple's opinion because she was not an acceptable medical source.

According to Plaintiff, the ALJ's rejection of Nurse Hipple's opinion, because it was based on Plaintiff's subjective complaints, was in violation of the Second Circuit's holding in *Green-Younger v. Barnhart*, 335 F.3d 99 (2d Cir. 2003). (Dkt. No. 11 at 13-15 [Pl.'s Mem. of Law].) However, *Green-Younger* "stands for the proposition that a treating physician's opinion that is adequately supported by medical evidence is not undermined because the opinion also relies on the [plaintiff's] subjective complaints." *Gorman v. Comm'r of Soc. Sec.*, No. 5:12-CV-0939, 2013 WL 4049978, at *4 (N.D.N.Y.

8

Aug. 9, 2013). Unlike in *Green-Younger*, the ALJ here was not requiring evidence "beyond the clinical findings necessary for a diagnosis of fibromyalgia." *Green-Younger,* 335 F.3d at 106. Here, the ALJ concluded that Nurse Hipple's limitations were not supported by treatment records from Oswego County Health Center or by the consultative examiner's report and opinion. (T. 107.) Therefore, the ALJ did not reject Nurse Hipple's statement merely because it was based on subjective complaints, nor did the ALJ require evidence beyond that necessary for a diagnosis of fibromyalgia. The ALJ properly rejected the nurse's statement because it appeared to be based on subjective complaints which were not supported by the medical evidence in the record.

Therefore, it is recommended that the ALJ's treatment of Nurse Hipple's opinion be upheld. The ALJ did not summarily dismiss her opinion based on her status as a non-acceptable medical source and further substantial evidence supported the ALJ's reasoning that Nurse Hipple's opinion was not supported by the overall medical evidence in the record.

### B. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly

9

and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the plaintiff's reported symptoms. *See* 20 C.F.R. § 404.1529. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the plaintiff's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to relieve his pain or other symptoms; (5) other treatment the plaintiff receives or has received to relieve her pain or other symptoms; (6) any measures that the plaintiff takes or has taken to relieve her pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to her pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of those symptoms was not entirely credible. (T. 107.) Elsewhere in his decision the ALJ concluded that the record "reflects credible limitations because of fibromyalgia." (T. 104.)

Plaintiff argues that the ALJ erred in his assessment of Plaintiff's activities of daily living in making his credibility determination. (Dkt. No. 11 at 15-17 [Pl.'s Mem. of Law].)[3] Plaintiff essentially argues that the ALJ erred in concluding that Plaintiff's activities of daily living equate to the ability to perform substantial gainful activity on a consistent and substantial basis. (*Id.* at 16.) To be sure, an ALJ may not penalize Plaintiff for enduring the pain of her disability. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("a claimant need not be an invalid to be found disabled").[4]

Regarding her activities of daily living, Plaintiff testified at the hearing that she was able to drive, separate the laundry, and cook at least three times a week. (T. 70-71.) Plaintiff testified that her migraine headaches would prevent her from performing a "sit-down" job. (T. 73.)

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported

---

[3] In support of her argument that the ALJ erred in his credibility determination, Plaintiff argues that the ALJ's "error at step two is compounded by the ALJ's failure to appropriately consider the Plaintiff's fibromyalgia." (Dkt. No. 11 at 16 [Pl.'s Mem. of Law].) However, Plaintiff does not raise the argument that the ALJ erred at step two. This appears to be a typo and the ALJ's step two determination will not be discussed.

[4] In support of her argument Plaintiff quotes *Balsamo v. Chatter*, 142 F.3d 75 (2d Cir. 1998); however, the quote provided by Plaintiff is not from *Balsamo*, but instead from *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."). (Dkt. No. 11 at 17 [Pl.'s Mem. of Law].) This quote does not appear in *Balsamo*, nor does *Balsamo* refer to the *Smith* case.

11

the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review). Here, Plaintiff's activities of daily living could reasonably support the ALJ's conclusion that her statements regarding the limiting effects of her symptoms were not as severe as alleged.

In addition to Plaintiff's activities of daily living, the ALJ relied on objective medical evidence in the record such as treatment notations and testing. (T. 105-106.) For example, in support of his determination that Plaintiff's had credible limitations due to fibromyalgia, the ALJ relied on acceptable diagnostic techniques in the record. (T. 104.) In evaluating Plaintiff's reports of limitations due to her migraine headaches, the ALJ relied on emergency room treatment notations, diagnostic testing, and Plaintiff's statements of limitations to her treating sources. (T. 105-106.) The ALJ further relied on other aspects of Plaintiff's treatment, including medications. For example, the ALJ discussed Plaintiff's medication and its effectiveness on controlling her pain. (T. 105.) Therefore, the ALJ relied on many factors, in addition to Plaintiff's reported activities of daily living, in making his credibility determination.

The ALJ's overall credibility determination was made in accordance with the Regulations and supported by substantial evidence as outlined herein. Any error the ALJ may have made in evaluating Plaintiff's activities of daily living would be harmless because the credibility determination was supported by other substantial evidence in the record. *See Snyder v. Colvin*, No. 15-3502, 2016 WL 3570107, at *2 (2d Cir. June 30, 2016).

Therefore, it is recommended that the ALJ's credibility determination be upheld. The ALJ did not err in his evaluation of Plaintiff's activities of daily living and further, any error would be harmless because other substantial evidence supported the ALJ's overall credibility determination.

### C. The ALJ's Step Four Determination

At step four, the ALJ was required to consider whether Plaintiff retained the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In order to survive step four, "the [plaintiff] has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally. This inquiry requires separate evaluations of the previous specific job and the job as it is generally performed." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citations omitted). The Dictionary of Occupational Titles ("DOT") is used to describe jobs "as they are generally performed," *Jasinski*, 341 F.3d at 185, and the Commissioner is permitted to take administrative notice of the DOT. *See* 20 C.F.R. § 404.1566(d)(1); *see also Petrie v. Astrue*, 412 Fed.Appx. 401, 409-410 (2d Cir. 2011).

The test for actual performance of a plaintiff's past relevant work is "[w]hether the [plaintiff] retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as ... she actually performed it." SSR 82-61, 1982 WL 31387, at *1 (1982). The test for general performance of a plaintiff's past relevant work is "[w]hether the [plaintiff] retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." *Id.* at *2. ALJs may rely on job descriptions contained in the DOT to define how jobs are "usually performed in the national economy." *Id.*

13

Plaintiff contends that the ALJ erroneously determined, at step four, that she was capable of performing her past relevant work as a sales manager. (Dkt. No. 11 at 9-11 [Pl.'s Mem. of Law].) Specifically, Plaintiff asserts that Plaintiff's occupation of sales manager was a composite job and the ALJ could not deny Plaintiff's claim at step four because an ALJ was not permitted to make and adverse determination that Plaintiff remained capable of performing a composite job as "generally performed." (*Id.*)

A composite job combines significant elements of two or more jobs, and has no counterpart in the DOT. *See* SSR 82-61, 1982 WL 31387, at *2. If the ALJ finds that a plaintiff's past relevant work is a composite job, then it cannot suffice at step four as work "as generally performed in the national economy." *See* Program Operations Manual System ("POMS") DI 25005.020(B).

At the hearing the VE testified, in part, that Plaintiff's past relevant work consisted of "manager, sales [] DOT number 163.167-018." (T. 84.)[5] The VE did not testify that Plaintiff's past relevant work, as Plaintiff actually performed it or as it was generally performed, was a composite job. *See Fody v. Colvin*, 169 F. Supp. 3d 804, 810 (N.D. Ill. 2015), *aff'd,* 641 F. App'x 568 (7th Cir. 2016) (plaintiff's past relevant work was not a composite job where the VE did not opine that it was). Plaintiff did not question the

---

[5] "Manages sales activities of establishment: Directs staffing, training, and performance evaluations to develop and control sales program. Coordinates sales distribution by establishing sales territories, quotas, and goals and advises dealers, distributors, and clients concerning sales and advertising techniques. Assigns sales territory to sales personnel. Analyzes sales statistics to formulate policy and to assist dealers in promoting sales. Reviews market analyses to determine customer needs, volume potential, price schedules, and discount rates, and develops sales campaigns to accommodate goals of company. Directs product simplification and standardization to eliminate unprofitable items from sales line. Represents company at trade association meetings to promote product. Coordinates liaison between sales department and other sales-related units. Analyzes and controls expenditures of division to conform to budgetary requirements. Assists other departments within establishment to prepare manuals and technical publications. Prepares periodic sales report showing sales volume and potential sales. May direct sales for manufacturer, retail store, wholesale house, jobber, or other establishment. May direct product research and development. May recommend or approve budget, expenditures, and appropriations for research and development work." DOT 163.167-018. This occupation is classified as sedentary work. *Id*.

VE's testimony during the hearing, nor did Plaintiff argue at the hearing that her past work as a sales manager was a composite job. (T. 84-86); *compare Lyda v. Colvin*, No. 15-CV-02304, 2016 WL 6500874, at *3 (D. Colo. Oct. 28, 2016) (plaintiff's past relevant work was a composite job where in addition to performing the elements outlined under "owner/manager nut processing" plaintiff was also responsible for marketing products, which was not included under that heading, and which the VE testified constituted the separate occupation of "product broker").

Plaintiff appears to confuse a composite job with a job as "actually performed." Plaintiff acknowledges in her brief that the title of sale manager accurately described a "portion" of her job duties; however, "her actual job also involved significant duties that are not captured by that job title." (Dkt. No. 11 at 10 [Pl.'s Mem. of Law].) Plaintiff failed to identify what additional duties she had that were not included in the DOT listing for sales manager; and further, Plaintiff failed to provide an additional DOT listing that encompassed those additional duties. Instead, Plaintiff argues that unlike the DOT listing for sales manager, Plaintiff often lifted over 50 pounds and was on her feet most of the day. (*Id*. at 10.) At the hearing the VE testified that Plaintiff's work as a sale manager (DOT 163.167-018) is listed in the DOT as a sedentary occupation, but that Plaintiff actually performed it at a heavy exertional level based on Plaintiff's testimony. (T. 84.)[6] The VE's testimony is consistent with Plaintiff's assertion that her position as a sales manager, as actually performed, required her to lift 50 pounds and be on her feet most of the day.

---

[6] Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work. 20 C.F.R. § 404.1567(d).

Plaintiff failed to show her past relevant work was composite work. Plaintiff instead essentially argues that she cannot perform her past relevant work as she actually performed it. The ALJ properly relied on VE testimony that Plaintiff actually performed work as a sales manager at the heavy exertional level, but the occupation as generally performed in the national economy is performed at the sedentary level. Therefore, it is recommended that the ALJ's step four determination be upheld, because the ALJ properly concluded at step four that Plaintiff was capable of performing her past relevant work as a sales manager as it is generally performed.

Plaintiff next argues that the ALJ erred in his step four determination because her past work as a data entry clerk was not substantial gainful activity ("SGA") or for a sufficient length of time. (Dkt. No. 11 at 11-12 [Pl.'s Mem. of Law].) The Court need not address this argument. Any error the ALJ may have made in his conclusion that Plaintiff's performed work as a data entry clerk was harmless, because the ALJ properly determined that Plaintiff could perform her past relevant work as a sales manager. Therefore substantial evidence supported the ALJ's step four determination that Plaintiff could perform her past relevant work.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 13, 2017

_____
William B. Mitchell Carter
U.S. Magistrate Judge